RAYMON THOM, JR., ALIAS RAIMOUNDS VACHIERS *v.*
STATE OF ARKANSAS

5471                                          450 S. W. 2d 550

Opinion delivered March 2, 1970

*James R. Hannah,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

CONLEY BYRD, Justice. Appellant Raymon Thom, Jr., alias Raimounds Vachiers, was by information charged with (1) burglary of the Goff Service Station in Beebe; (2) petty larceny of $20 in money from the Goff Service Station; (3) burglary of the Pruitt Grocery Store in McRae; (4) grand larceny in the taking and carrying away of a quantity of groceries from the Pruitt Grocery Store; and since he had been convicted of second degree burglary in Indiana in 1962, and two counts of burglary and one count of grand larceny in Sebastian and Scott Counties, Arkansas, in 1966, the charges here were filed under the habitual criminal statute, Ark. Stat. Ann. § 43-2328 (Supp. 1969). Appel-

lant admitted the previous convictions and upon a jury trial was found guilty upon the counts of burglary and larceny. Pursuant to Ark. Stat. Ann. § 43-2328(3), the trial court fixed the penalty upon the felony charges at 21 years each, said sentences to run cumulatively to each other.

For reversal, appellant contends that the trial court erred in failing to suppress evidence seized from his automobile without a search warrant; that the trial court erred in invoking Ark. Stat. Ann. § 43-2328(3); that appellant's sentence constitutes cruel and unusual punishment; and that the trial court erred in giving an instruction on unexplained possession of recently stolen property.

The record shows that Mr. Ben Wall, city marshal of Beebe, Arkansas, observed a white car parked between the tanks and the front door of the Goff Service Station about 4:00 A. M. on March 21, 1969. As the city marshal pulled in behind the automobile to see the license number he noticed somebody inside the station. When his automobile lights illuminated the inside of the station he saw appellant tampering with the cigarette machine. When appellant saw the city marshal he ran out through the grease room overhead door and disappeared behind the station. Although the city marshal gave chase for some 200 yards he was unable to apprehend appellant. The city marshal then notified other law enforcement officials and caused the white automobile to be towed to Baker Chevrolet Co.

Mr. Adrian Woodruff, the chief deputy sheriff of White County, while driving north on Highway 67 business route coming into Beebe, drove by Lemon Street and observed appellant coming out of a fence row onto the street. He immediately recognized him from the description given by the city marshal.

About the time appellant was apprehended by Officer Woodruff, Mr. Tommy Pruitt, a McRae grocer, discovered that his store had been burglarized and a

quantity of merchandise (approximately $150 to $170 worth) was missing. The officers in searching the white automobile at Baker Chevrolet discovered a billfold containing a pink slip and title to the car in appellant's name. In addition there were grocery items in the back seat and trunk of the car which Mr. Pruitt identified as coming from his grocery store and which he valued from $150 to $170.

POINT 1: We find no merit in appellant's contention that the trial court should have suppressed evidence obtained from the search of the automobile. The Fourth Amendment to the United States Constitution reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . ." Sometimes an automobile takes on the characteristics of a man's castle. Other times an automobile takes on the characteristic of an overcoat—that is, it is movable and can be discarded by the possessor at will. If appellant in his endeavors to avoid the clutches of the law had discarded his overcoat to make his flight more speedy, no one would think that an officer was unreasonably invading his privacy or security in picking up the overcoat and searching it thoroughly. In that situation most people would agree that the fleeing suspect had abandoned his coat as a matter of expediency as well as any rights relative to its search and seizure. What difference can there be when a fleeing burglar abandons his automobile to escape the clutches of the law? We can see no distinction and consequently hold that when property is abandoned officers in making a search thereof do not violate any rights or security of a citizen guaranteed under the Fourth Amendment.

POINT 2: Here appellant argues that for purposes of imposing sentence under the habitual criminal statute, appellant should have been sentenced under sub-section 2 of Ark. Stat. Ann. § 43-2328 instead of sub-section 3. He then argues that we should adopt the reasoning of *State* v. *Simpson,* (Wash. 1929) 277 P. 998,

which holds that a conviction under a habitual criminal statute on an information containing two or more counts arising out of acts committed simultaneously should amount only to one offense. The State on the other hand argues that we should follow those states holding to the contrary. Under the record here we find that we need not answer either argument because of the nature of the record.

The information to which appellant pleaded guilty alleges, "[T]hat defendant was convicted of second degree burglary and sentenced to two to five years in 1962 in the State of Indiana; defendant was convicted of two counts of burglary and one count of grand larceny in Sebastian and Scott Counties in Arkansas in 1966 and was sentenced to three years." It is difficult for us to understand how a person could commit two burglaries simultaneously or commit two burglaries simultaneously in two different counties, even if we could construe the 1966 grand larceny charge as growing out of a simultaneous act committed in one of the burglaries. Consequently we hold that the trial court properly applied Ark. Stat. Ann. § 43-2328(3) under the evidence shown in the record.

POINT 3: It is true that under the punishment assessed against appellant it is possible that he may serve 63 years in the Arkansas State Penitentiary. We have consistently held that the fact that the punishment authorized in severe does not make it cruel or unusual. It is within the power of the legislature to classify crimes and determine punishment for violations of such classifications, see *Blake* v. *State,* 244 Ark. 37, 423 S. W. 2d 544 (1968).

POINT 4: We find no merit in appellant's argument that the lower court erred in giving an instruction on unexplained possession of recently stolen property. The instruction given has been approved by this court many times, see *Bridges* v. *State,* 177 Ark. 1193, 9 S. W. 2d 240 (1928); *Threadgill* v. *State,* 207 Ark.

478, 181 S. W. 2d 236 (1944).

Affirmed.