Leon HENDERSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–82–716.

Court of Criminal Appeals of Oklahoma.

Feb. 12, 1985.

Dennis F. Seacat, Romine & Seacat, Inc., Okmulgee, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

BRETT, Judge:

Leon William Henderson was charged in the District Court of Grady County, Case No. CRF–82–1, with seven (7) counts of Kidnapping, After Former Conviction of Two or More Felonies (21 O.S.1981, § 741), and three (3) counts of Armed Robbery, After Former Conviction of Two or More Felonies (21 O.S.1981, § 801). He was convicted on each count, and sentenced to "double life imprisonment" plus twenty (20) years on each count. The sentences were ordered to be served consecutively.

We affirm the judgments but modify the sentences.

On December 30, 1981, the Pizza Hut restaurant in Chickasha was robbed at gunpoint by two men, one of whom was subsequently identified as the appellant. According to the State's witnesses, the men emptied the restaurant safe and took money from the manager and a customer. The manager, a waitress, and five customers were locked in a walk-in cooler at the restaurant for some twenty minutes.

Appellant was identified by several of the victims. A red and white Cadillac similar to that used by the robbers also was linked to appellant and the crime through evidence found in the vehicle.

As his defense, appellant testified he was in Dallas, Texas, the night of the robbery. He produced two witnesses to corroborate his testimony. Appellant claimed his nephew, who pled guilty to the robbery-kidnapping, had access to the car while appellant was in Dallas.

I.

Appellant's first assignment of error asserts the trial court erred in denying his first motion for a continuance. Appellant based this motion on the unavailability of his common-law wife, who, he claimed, would corroborate the alibi defense presented.[1] We find the trial court properly denied the motion.

Although appellant filed a written motion requesting the continuance, he failed to attach an affidavit in support of the motion as required by 12 O.S.1981, § 668. See Crosswhite v. State, 317 P.2d 781 (Okl.Cr. 1957). We have repeatedly held that failure to file an affidavit in support of the motion is fatal. Nichols v. State, 555 P.2d 70 (Okl.Cr.1976). We accordingly reject appellant's claim.

II.

In another assignment of error, appellant contends the trial court erred in admitting evidence of another crime allegedly committed by this appellant. We hold this evidence was properly admitted.

The facts relating to this issue reveal that soon after the robbery-kidnapping occurred, Chickasha police broadcast over all police channels a description of the vehicle used. Not long after receiving this message, Officer Steve Samu of the Purcell Police Department stopped a car matching the description. As he approached the vehicle, Samu noticed one of the occupants had a gun. Samu returned to his scout car and the suspect vehicle sped away.

Samu pursued the Cadillac in his scout car. At one point the suspect vehicle stopped and Samu fired two shots at the

---

1. Mid-way through trial, appellant moved a second time for a continuance. On this second occasion, appellant sought the continuance to secure the attendance of Earnestine Turner, another defense witness. The appellant has not raised on appeal the trial court's refusal to grant the second motion, although this issue was thoroughly briefed by the Attorney General. Accordingly, we will not consider this issue. Moreover, even if the issue had been properly raised, the appeal record is insufficient to afford a proper review. See McGaha v. State, 492 P.2d 1101 (Okl.Cr.1971).

passenger, who fled on foot. The vehicle again sped away. After the car stopped a second time, the driver exchanged gunfire with Samu before escaping on foot into a residential area. Neither the driver nor the passenger was located by Purcell police. Samu testified he was unable to identify either of the car's occupants.

Title 12 O.S.1981, § 2404(B) prohibits admission of evidence of other crimes allegedly committed by a defendant, unless the evidence is offered to prove opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Bruner v. State*, 612 P.2d 1375 (Okl.Cr.1980), this Court held that "where there is a 'logical connection' with the offense charged, evidence of separate and independent crimes may be admitted." In the instant case such evidence exists insofar as a considerable amount of money was found in the car, as well as a jacket belonging to appellant and a bank bag identical to the one used by the Pizza Hut. When a casual connection exists between the other crime shown and the one for which appellant is standing trial, evidence of both crimes is admissible. The test is whether the evidence has probative value to some material point in issue. In this case the evidence of the Purcell automobile chase and shoot-out was probative to the issue of identity. *Brooks v. State*, 561 P.2d 137 (Okl.Cr.1977). We therefore hold this assignment of error is without merit.

### III.

Appellant also seeks a ruling from this Court that evidence was unlawfully seized from the automobile by Purcell police and was improperly admitted into evidence. The evidence in question consisted of letters addressed to appellant, some $1,300 and a bank bag identical to that used at the Pizza Hut, a jacket identified as that worn by appellant during the robbery-kidnapping, and several bullets.

We cannot agree with appellant's contention that this search and seizure was accomplished in violation of the Fourth Amendment. We have previously held that an automobile may constitute abandoned property for Fourth Amendment purposes. *See Day v. State*, 518 P.2d 1283 (Okl.Cr. 1974). The situation here is nearly identical to that in *State v. Asbury*, 124 Ariz. 170, 602 P.2d 838 (Ariz.App.1979), in which the Arizona Court of Appeals held:

The driver's flight, leaving behind the vehicle and its contents, constituted an abandonment of the vehicle. *State v. Childs*, 110 Ariz. 389, 519 P.2d 854 (1974). His Fourth Amendment protection against unreasonable searches and seizures of property ended when the property was abandoned, since there was no longer a reasonable expectation of privacy in that property. *Id.* Appellant's argument that the state did not establish it was he who abandoned the car is specious where the vehicle registration, a fingerprint that was less than two hours old, and other evidence clearly point to the contrary. He therefore "has no standing to complain of a search or seizure of property he has voluntarily abandoned." *State v. Walker*, 119 Ariz. 121, 126, 579 P.2d 1091, 1096 (1978).

*Id.* at 172–73, 602 P.2d at 840–41. *See also State v. Green*, 44 Or.App. 253, 605 P.2d 746 (1980); *Thom v. State*, 248 Ark. 180, 450 S.W.2d 550 (1970). We agree with the holding and rationale of the Arizona court and accordingly reject this assignment of error.

### IV.

Appellant's fourth assignment of error attacks the sufficiency of the evidence. He claims some of the testimony was conflicting, therefore, the evidence presented was insufficient to support the conviction. We cannot agree with this claim. We have repeatedly held that "when the sufficiency of evidence presented is challenged on appeal, as it is herein, the test is whether a *prima facie* case has been established. As long as that test is satisfied, fact questions are for the jury to determine." *Hunt v. State*, 601 P.2d 464 (Okl.Cr.1979).

In this case, several of the victims identified appellant as one of two men who

robbed and confined them in a walk-in cooler at the Pizza Hut restaurant. Papers bearing appellant's name were found in a car matching the description of the vehicle used in the robbery-kidnapping and evidence showed appellant had access to the car. The State established a *prima facie* case, and we will not disturb this portion of the jury's verdict.

## V.

■ Appellant next argues the trial court reversibly erred by allowing the prosecutor to engage in improper closing argument. We note that none of the improper comments alleged on appeal were objected to at trial. Therefore, we decline to reverse on this basis. *Freeman v. State*, 681 P.2d 84 (Okl.Cr.1984).

## VI.

Although the statements of the prosecutor were not objected to, they may well have improperly influenced the jury in its consideration of punishment. Appellant has asserted the sentences imposed were excessive. We agree with this contention. In *Freeman v. State*, 681 P.2d 84 (Okl.Cr. 1984), we noted that "[i]n determining whether the sentence is excessive, we will consider the entire record, including improper matter received without objection, and, where justice requires, will modify the sentence." *Id.* at 86.

■ We are concerned with the impropriety of several of the prosecutor's arguments. Many of his comments constitute an attempt to improperly deride the character and truthfulness of the defense witnesses. This type of argument is not permitted in our jurisdiction. *See Lewis v. State*, 569 P.2d 486, 488 (Okl.Cr.1977); *Ray v. State*, 510 P.2d 1395 (Okl.Cr.1973).

■ The prosecutor also attempted to compare this case to the Sirloin Stockade murders in Oklahoma City, in which six persons were killed in the walk-in freezer of a restaurant. He stated:

You talk about this crime, Michael King put it to you as straight as anybody.

What was going through your mind when you were going in that—in that frozen locker? I thought it was going to an [sic] another Sirloin Stockade. That walk-in cooler, ladies and gentlemen, almost became another meat locker—exactly a meat locker of human beings. All it was was just one trigger pull away-one trigger pull away, by two men, and one of them was this man in this courtroom today.... But Oklahoma City had to bring itself down here to Grady County to do it....

Mr. Horn said, we don't accept it and it's not reasonable to kill people. He put a [sic] 11 month old baby in a 40 degree freezer in there and you use your common sense as to how long that child will last in that freezer. That's a meat locker what it almost became, just like I said before.

T.R. 448

We have previously held that comments which compare the crime on trial with unrelated offenses are improper, as these comparisons unnecessarily inject fear and passion into the proceedings. *See Hildahl v. State*, 536 P.2d 1292, 1297 (Okl.Cr.1975). Furthermore, there is no indication in the record that appellant ever intended to commit the specific crime of murder. *Cobbs v. State*, 629 P.2d 368, 369 (Okl.Cr.1981).

■ The prosecutor also argued that the jury should impose a lengthy sentence, because appellant would otherwise remain a burden to the State through the welfare system. The prosecutor argued:

Ladies and gentlemen, these letters here show that these were his applications for welfare and federal aid and for medical assistance. The Judgment and Sentences reflect this man has been in the penitentiary. *The evidence is just as clear to you as it can be. That Mr. Henderson is going to be a ward of the State one way or the other.... This man right here, if he's not put in the penitentiary, we're going to have to pay for putting him in the penitentiary and keeping him there, but you're either going to pay for his keep in the*

*penitentiary or this man you're going to pay for him—the victims of crimes are going to pay for him.*

\* \* \* \* \* \*

I ask you just as simply as I can at this time, you're the people of this county, of the State right now, *I ask you just to bite the bullet and go ahead and make up your mind because you're going to pay for this man for the rest of his life.*

\* \* \* \* \* \*

*He's going to be a liability to us for the rest of our lives.* (Emphasis added).

T.R. 460.

Through this argument the prosecutor once again appealed to the passions of the jury and raised a matter totally unrelated to the jury's duty. This argument was clearly improper. *See Marshall v. State,* 537 P.2d 423, 430 (Okl.Cr.1975).

■ The prejudicial impact of these errors no doubt contributed to the sentences imposed by the jury. Accordingly, we modify the sentence on each count to forty-five (45) years imprisonment.

■ Appellant also argues the trial judge erred by imposing consecutive, rather than concurrent, sentences. We have previously held "[i]t is a decision resting in the sound discretion of the trial court as to whether a defendant's sentences should run concurrently." *Lloyd v. State,* 654 P.2d 645, 647 (Okl.Cr.1982). We cannot say the trial judge abused his discretion by imposing consecutive sentences.

### VII.

We also have examined the assignments of error in the appellant's *pro se* brief, and find them to be without merit.

The judgments of the District Court are therefore AFFIRMED, but the sentences are MODIFIED to Forty-five (45) years imprisonment on each of the ten counts, to be served consecutively.

PARKS, P.J., concurs.

BUSSEY, J., concurs in part and dissents in part.

BUSSEY, Judge, concurring in part, dissenting in part:

I agree that the judgment and sentence should be affirmed. However, in light of the fact that the alleged improper comments were not objected to at trial coupled with the overwhelming evidence of appellant's guilt, I do not believe that the sentences should be modified.